RECEIVED
USDC CLERK, CHARLESTON, S:

2007 FEB 28  A 9: 58

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Preston Dotson, #153865,) | C. A. No. 2:06-1770-HFF-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Jon Ozmint; Colie Rushton; ) | |
| Dr. Aliwine: John Davis; ) | |
| Dr. Louis; Medical Staff of ) | |
| MCI, ) | |
| ) | |
| Defendants. ) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by an individual proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' summary judgment motion. 28 U.S.C. § 636(b).

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

The plaintiff, James Preston Dotson, filed his action on June 13, 2006, and named as defendants[2] Jon Ozmint, the Director of the South Carolina Department of Corrections (SCDC); Colie Rushton, the Warden of the McCormick Correctional Institution; J. Glenn Alewine, a physician employed by the SCDC; John Davis, the former Director of Health Services at SCDC; and Luis Olivencia-Font, a physician employed by SCDC. Dotson alleges that he has not been provided appropriate medical care and treatment for Hepatitis C and that he was prescribed Tylenol 3 pain medication to which he is allergic. Dotson seeks $200,000.00 in damages from each defendant and equitable relief.

The defendants answered the complaint on August 8, 2006, and filed a summary judgment motion November 7, 2006. On November 9, 2006, Dotson was provided copies of the defendants' motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On December 11, 2006, Dotson filed an opposition to the defendants' motion which he delineated as a motion to strike. Although Dotson's opposition is verified, it sets forth no contentions beyond those contained in his complaint, generally

---

[2] Governor Mark Sanford was also named as a defendant but has since been dismissed from the action. See, Order of the Honorable Henry F. Floyd, October 26, 2006, Doc. # 14.

2

cites case law, and promises that he will, at some unspecified time, show the court that the defendants were deliberately indifferent to his serious medical needs. Dotson attached to his opposition copies of the defendants' memorandum in support of their motion for summary judgment and their exhibits filed with their motion. The defendants filed a reply on December 21, 2006. Hence, it appears consideration of the motions is appropriate.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine

issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts either undisputed or according to the plaintiff as the non-moving party and all reasonable inferences therefrom are as follow.

Dotson is serving a seventeen (17) year sentence which began in 2002. Dotson has a Hepatitis C diagnosis. He seeks treatment for his Hepatitis C with the drug Interferon but he does not meet

the medical criteria.[3] He was not receiving Interferon before he was incarcerated and he is free to pay for the desired treatment from medical providers outside of the SCDC.

Defendant physicians Alewine and Olivencia-Font affied that they have not been, at any time, deliberately indifferent to any serious medical need of Plaintiff.  All defendants deny that they have, at any time, violated any of Plaintiff's constitutional rights.

In his verified complaint Dotson set forth his claim as follows.

> "On March 28, 2002 I was dianosed with Hepititis-C.  Dr. Luis C. Olivencia-Font told me I had a very very poorly liver.  He said he was going to order a liver biopsy.  I never receieved the liver biopsy.  Dr. Olivencia-Font determend the condition of my liver panel test.  Next treatment was vaccinenation against Hepititis A & B  This consists of a 3 shot (does) serise.  First shot - 30 days later 2nd shot - after 6 months 3rd dates of first an second attemp to be included in brief.  Third attempt dates 1st 3-12-03 2nd 4-15-03 3rd did not receive.  Forth attempt all 3 shot completed 1st 4-19-04 2nd 5-19-04 final 10-26-04  I have asked repeatedly for treatment with the drug Inter-feron.  Repetedly I have been denied.  SCDC protocol does not fall in compliance with the American Medical Assocation protecol never the less I have met SCDC protocol.  SCDC has not followed there own protocol.
>
> Dr. Louis prescribed me Tylenol #3 for pain.  I am alergic to codine.  I have to take the medicine or live in sevire pain.  This medication made me

---

[3] Plaintiff indicated that he believes that he did meet the criteria.  However, he is not a physician and he has no admissible evidence to support his belief.

5

extremly sick on my stomach. Notice of being alergic to codine is in my medical records an on the log book in the pill line where I was given Tylenol #3."

## **LAW RELATED TO MEDICAL CARE AFFORDED PRISONERS**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one who has committed a crime. See, U.S. Const. Amend. VIII. Accordingly, a prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

6

Farmer v. Brennan, 511 U.S. 825 (1994) and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison official s must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court

pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986)(a state's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities).

Likewise, constitutionally, state prisons are not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a

8

constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable under 42 U.S.C. § 1983. Daniels v. Williams, 474 U.S. 327 (1986).

## RESPONDEAT SUPERIOR

It is settled that the doctrines of vicarious liability and respondeat superior do not apply in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). A defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

## QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). In Cleavinger v. Saxner, 474 U.S. 193 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials. In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of

9

> which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 118 S.Ct. 89 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Lane, 526 U.S. 286, 290 (1999). If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' motion for summary judgment should be granted and the plaintiff's "motion to strike" be denied.

First, there is no evidence that Defendant Ozmint was aware of any of the acts or omissions alleged by Plaintiff, or that he either failed to take corrective action as a result of deliberate indifference or tacitly authorized any such act or omission. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984). Nor are there allegations that Defendant Ozmint had any interactions at all with Plaintiff at any time relevant to this action. Since the principle of respondeat superior does not apply in §1983 actions as here, Plaintiff has failed to state a claim against Defendant Ozmint and the action against him should be dismissed.

With regard to Defendants Rushton and Davis, the only evidence is that neither has ever had any responsibilities with regard to the provision of medical care and treatment to Dotson. (Aff. of Rushton and Davis). Dotson's claims against them also necessarily implicate the principle of respondeat superior. As such, Plaintiff has failed to state a claim against either Rushton or Davis and the action against them should be dismissed.

Similarly, defendant Alewine is identified only as "Dr. Alewine who is medical supervisor." For the reasons set forth above, Plaintiff has failed to state a claim against Alewine and the action against him should be dismissed.

Next, the Plaintiff's claim of improper medical care fails to rise to the level of an actionable constitutional tort, i.e., it simply does not meet the standard for establishing cruel and

11

unusual punishment. Plaintiff has not presented any evidence that, at any time relevant to this action, he suffered from any objectively serious medical condition or need, or that he faced a risk of serious harm to his health or well-being. Plaintiff's SCDC medical records nowhere indicate that he was experiencing any immediately life-threatening or other serious ailment, injury or illness at any relevant time.

The sworn affidavits of Defendants, with Plaintiff's undisputed medical records, show that Plaintiff has been given a plethora of medical care. Plaintiff's medical records indicate that he has been seen on numerous occasions by medical staff of the facilities and institutions in which he was housed. These records also indicate that Plaintiff's medical complaints have been documented, assessed, and treated. Specifically, with regard to Plaintiff's diagnosis of Hepatitis C, these records indicate that this condition has been monitored on a regular basis, and addressed with Plaintiff. SCDC has in place criteria used to assess whether implementation of Interferon treatment for Hepatitis C is medically appropriate. Plaintiff has been assessed to determine whether he meets the criteria and medical assessments have determined that he is not a proper candidate for the treatment. Although the treatment regimen and the criteria used to determine if he is a candidate for its use has been explained to him by medical personnel, he believes that he is

being subjected to cruel and unusual punishment because the doctors determined that the treatment is not medically appropriate for him. However, Plaintiff offers no evidence from any source which would support his contention that he is entitled, on constitutional grounds, to receive the specific treatment he seeks.

In short, Plaintiff's evidence shows, at best, a disagreement between himself and SCDC doctors as to his medical treatment. A mere disagreement between an inmate and physician concerning whether the inmate is receiving proper medical care fails to present a constitutional issue which the courts will entertain. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). The defendants are entitled to summary judgement as a result.

Further to the extent Plaintiff alleges malpractice, no § 1983 claim lies. Negligence or malpractice in medical services does not create a constitutional cause of action. Moreover, medical malpractice would not become a constitutional issue merely because the plaintiff is a prisoner. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Additionally, since Plaintiff has failed to allege that the actions of any defendant violated his constitutional rights, qualified immunity is available to the defendants in their individual capacities to the extent Plaintiff seeks damages.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motions for summary judgment be granted and that the plaintiff's motion to strike be denied.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
February 28, 2007

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).